IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRIT UW LIMITED** | § § § | **PLAINTIFF/ COUNTER-DEFENDANT** |
| **v.** | § § § | **Civil No. 1:21-cv-313-HSO-BWR** |
| **ATWOOD PROPERTIES, LLC** | § § § § | **DEFENDANT/ COUNTERCLAIMANT** |
| **v.** | § § § | |
| **IAS CLAIM SERVICES** | § | **COUNTER-DEFENDANT** |

<u>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF BRIT UW LIMITED'S MOTION [84] TO STRIKE THE DECLARATION [80-3] OF JOHN ROSETTI; DENYING PLAINTIFF BRIT UW LIMITED'S MOTION [74] FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT ATWOOD PROPERTIES, LLC'S MOTION [82] FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF NOTICE**</u>

BEFORE THE COURT are Plaintiff Brit UW Limited's Motion [74] for

Summary Judgment; Defendant Atwood Properties, LLC's Motion [82] for Partial

Summary Judgment on the Issue of Notice;[1] and Plaintiff Brit UW Limited's Motion

[84] to Strike the Declaration [80-3] of John Rosetti, which Defendant Atwood

---

[1] In response to Brit's Motion [74] for Summary Judgment and in support of its own Motion [82], Atwood requests oral argument. *See* Resp. [80] at 1 (citing L.U. Civ. R. 7(b)(6)(A)); Mot. [82] at 1 (same); Mem. [83] at 1 (same); Rebuttal [93] at 1 (same). Atwood does not articulate or attempt to explain how oral argument would be beneficial. *See* Resp. [80] at 1 (citing L.U. Civ. R. 7(b)(6)(A)); Mot. [82] at 1 (same); Mem. [83] at 1 (same); Rebuttal [93] at 1 (same). Given the thoroughness of the parties' briefs and the nature of the issues raised, the Court finds that oral argument would not be helpful. Atwood's request should be denied.

Properties, LLC submitted in support of its Response [80] to Plaintiff's Motion [74] for Summary Judgment.

After consideration of the record in this case and relevant legal authority, the Court finds that Plaintiff Brit UW Limited's Motion [84] to Strike should be granted, that its Motion [74] for Summary Judgment should be denied, and that Defendant Atwood Properties, LLC's Motion [82] for Partial Summary Judgment should be denied.

## I. BACKGROUND

A.  Factual background

Defendant/Counterclaimant Atwood Properties, LLC ("Atwood" or "Assured"), owns real estate holdings consisting of "over thirty-five (35) doors located in the Gulfport, Mississippi area," including both "single residential units" and "multi-residential units."  Decl. [80-2] at 1 (Declaration of Mark Pettit "Pete" Atwood, Jr.). On or about December 17, 2019, Atwood purchased a real estate owned asset protection insurance policy (the "Policy") for its real estate portfolio through the Lloyd's of London insurance market.  *See id.*; Policy [1-1].  Plaintiff Brit UW Limited ("Plaintiff" or "Brit") was a subscriber to the Policy.  *See* Compl. [1]; Policy [1-1].

The Policy "cover[ed] all property and/or interest at risk as of 12:01 AM (Standard Time at place of issuance) on 12/17/2019 and continue[d] in force until 12:01 AM (Standard Time at place of issuance) on 12/17/2020."  Policy [1-1] at 10. According to Brit, the Policy "provides coverage for [Atwood's] real estate portfolio

as reported on a monthly basis, albeit on separate properties through a list of the properties." Mem. [75] at 7.  Under the Policy, Atwood "is required to report to Underwriters, on or before the tenth (10th) day of each month, a complete transaction report including the full replacement cost of each property to be insured," and a premium is calculated and paid each month.  *Id.* (emphasis removed).   Atwood's Memorandum explains that this allows "the flexibility to add and delete properties as they are bought and sold," and the Policy premium "could be adjusted on a month-to-month basis as Atwood LLC reported properties that were added or deleted."  Mem. [83] at 7-8.

In order to advise of loss or damage to property, the Policy contained a notice provision which stated as follows:

**NOTICE OF LOSS, DUTIES AND RESPONSIBILITIES**

The Assured shall immediately report in writing, to the Underwriters, a description of every claimed loss or damage which occurs and may become a claim under this insurance immediately after it becomes known to the Assured. You may make a claim for loss or damage covered under this policy/certificate if you notify Underwriters, but in no case, later [sic] than 30 days following the date of loss or damage.

Policy [1-1] at 21 (emphasis in original).

During the Policy period, on October 28 and 29, 2020, Hurricane Zeta struck the Gulfport, Mississippi, area causing heavy rains, storm surge, and strong winds, resulting in damages to Atwood's properties. *See* Decl. [80-2] at 1-2.  Atwood's managing member and president, Pete Atwood ("Mr. Atwood"), purportedly began to visit its insured properties immediately after the storm "to make an assessment of the most visibly damaged locations." *Id.* at 2.  According to Mr. Atwood,

3

beginning on or around November 2, 2020, he and his contractor Chuck Vance ("Mr. Vance"), "continually reported damage" to the properties to Atwood's insurance agent Betz Rosetti & Associates ("Betz Rosetti") to the extent they were able to access them because of downed trees and power lines, and Betz Rosetti began reporting claims to the insurer prior to November 11, 2020. *Id.*

Brit assigned the formal claims handling process to IAS Claim Services ("IAS"), which in turn hired field adjuster Lucas McCoy ("Mr. McCoy"). *Id.* Mr. McCoy allegedly took weeks to conduct initial inspections of some of Atwood's properties, and as he did so, Mr. Atwood believed that Mr. McCoy's repair cost estimates were very low. *See id.* Mr. Atwood asked Mr. Vance to review Mr. McCoy's inspection reports, and Mr. Vance determined that the property damage was "grossly undervalued." *Id.* Mr. Vance requested that Mr. McCoy reinspect the properties, and he accompanied Mr. McCoy during those visits. *Id.* According to Mr. Atwood, "[u]pon reinspection, the estimated damage calculations increased and Atwood LLC received supplemental actual cash value ('ACV') payments for some previously-inspected properties." *Id.*

Mr. Atwood avers that

Mr. McCoy and Mr. Vance eventually agreed to a process whereby Mr. Vance would notify Mr. McCoy of suspected damage to certain properties and Mr. McCoy would schedule his inspections based on Mr. McCoy's availability. Mr. Vance would meet Mr. McCoy at each location to inspect the damage. Many location losses were resolved with IAS and the Lloyd's underwriters in this manner and with little issue.

*Id.* at 3. Mr. Atwood has identified six properties as examples of losses that were "resolved with IAS and the Lloyd's underwriters in this manner and well after the

4

thirty (30) day Policy reporting period." *Id.* However, when a different insured in the area submitted a large number of property damage claims to IAS all at once, this purportedly threw "a red flag triggering IAS to investigate those claims further," and IAS stopped processing and payment of Atwood's claims. *Id.* at 4.

B.    Procedural history

On October 6, 2021, Brit filed a Complaint [1] against Atwood in this Court seeking a declaration regarding its coverage obligations for damages Atwood's properties sustained during Hurricane Zeta. *See* Compl. [1]. Brit alleges that Atwood submitted seven timely property damage claims in compliance with the Policy's 30-day notice provision, and also a number of other, untimely ones. *See id.* at 10-11. Specifically, Brit asserts that Atwood "reported – and continues to report – claims more than 30 days after the date of loss in breach of the Policy's conditions." *Id.* at 12. The Complaint seeks declarations that Atwood failed to comply with the Policy's notice provision, that Brit has been prejudiced by Atwood's failure to comply, that Brit owes no obligation to Atwood, and that Atwood's "material breach of the Policy warrants a denial of coverage for any claims late reported after November 27, 2020, or more than 30 days following the October 28, 2020 date of loss." *Id.* at 14.

Atwood filed an Answer [11] to the Complaint [1], followed by an Amended Answer and a Counterclaim [18] against Brit, which added IAS Claims Services ("IAS") as a Counter-Defendant.[2] *See* Am. Countercl. [18]. Atwood advances claims

---

[2]  IAS is not a plaintiff but is only named as a "Counter-Defendant" in Atwood's Amended

against Brit for bad faith breach of contract, breach of the duty of good faith and fair dealing, equitable estoppel, and respondeat superior, *see id.* at 8-10, and claims against IAS for "grossly negligent adjusting of claim" and "grossly negligent misrepresentation," *id.* at 10-13.  Atwood also raised a "respondeat superior" claim against IAS, *id.* at 13-14, which the Court dismissed upon IAS's Motion [59] because it is not an independent cause of action, *see* Order [124] at 12.

Brit has now filed a Motion [74] for Summary Judgment on its main declaratory judgment claim "on the limited issue of whether Brit's policy provides coverage for claims reported by the Defendant/ Counter-Plaintiff more than thirty (30) days after Hurricane Zeta, the reported date of loss."  Mot. [74] at 1.  Brit asks that "the Court grant summary judgment that Atwood is not entitled to coverage and policy proceeds for any claim made more than 30 days after the date of loss or damage to any specific property insured."  *Id.* at 2.

Atwood has filed its own Motion [83] for Partial Summary Judgment on the Issue of Notice.  *See* Mot. [83].  Atwood argues that, under the circumstances of this case, it is "entitled to partial summary judgment and an order from this Court finding that the 30 day notice provision is a condition that Brit could waive, and/or that Brit could be estopped to assert, and/or that would require Brit to prove prejudice due to any delay."  *Id.* at 2.

---

Counterclaim.  *See* Compl. [1]; Am. Countercl. [18]; *see also* Order [17] (Magistrate Judge's Order classifying the Atwood's claim against IAS as a counterclaim, rather than a third-party claim, but permitting it to file an amended answer with a counterclaim against IAS).

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Nat'l Liab. & Fire Ins. Co. v. Riata Cattle Co., Inc.*, 55 F.4th 1041, 1043 (5th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a movant also carries the burden of proof at trial, such as when he seeks summary judgment on his own claim or affirmative defense, this burden is higher; he must "establish beyond peradventure *all* of the essential elements of the claim or defense." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (emphasis in original) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

On cross-motions for summary judgment, a court reviews each party's motion independently. *See Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022). In reviewing the entire record, a court considers the evidence in a light most favorable to each nonmovant and draws all reasonable inferences in its favor. *See id.*; *Pioneer Expl., L.L.C.*, 767 F.3d at 511.

B.    Applicable substantive law

As the parties agree, in a diversity case such as this one, the Policy must be interpreted according to the substantive law of the forum, Mississippi.  *See, e.g.,* Mem. [75] at 4-6; Mem. [83] at 14; *McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013); *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).  Mississippi courts treat insurance policies as contracts and interpret them the same as other contracts.  *See Hayne v. The Drs. Co.*, 145 So. 3d 1175, 1180 (Miss. 2014).

When the words of an insurance policy are plain and unambiguous, they are afforded their "plain, ordinary meaning" and will be applied "as written" based solely upon the four corners of the document.  *Noxubee Cnty. Sch. Dist. v. United Nat. Ins. Co.,* 883 So. 2d 1159, 1165 (Miss. 2004) (quotation omitted); *see Hillhouse v. Chris Cook Constr., LLC*, 325 So. 3d 646, 652 (Miss. 2021).   A court "should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Minnesota Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 968 (Miss. 2014) (quotation omitted).

A court may not "resort to extrinsic evidence or rules of contract construction if policy provisions are unambiguous" and may not "make a contract differing from that made by the parties themselves" or "enlarge an insurance company's obligations where the provisions of its policy are clear." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007) (quotation omitted).  In reviewing

8

an unambiguous contract, a court focuses "upon the objective fact—the language of the contract"—and is "concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Hillhouse*, 325 So. 3d at 652 (emphasis removed) (quotations omitted).

The question of whether a policy is ambiguous is one of law. *See Leonard*, 499 F.3d at 429 (citing *Benchmark Health Care Ctr., Inc. v. Cain*, 912 So. 2d 175, 182 (Miss. 2005)); *see also Noxubee Cnty. Sch. Dist.,* 883 So. 2d at 1165 ("The interpretation of an insurance policy is a question of law, not one of fact."). Ambiguity "arises when a term or provision is susceptible to more than one reasonable meaning," or if there is an "internal conflict" in a policy's provisions, which "renders uncertain the meaning of the policy as a whole." *Leonard*, 499 F.3d at 429 (quotation omitted).

"[A]mbiguous and unclear policy language must be resolved in favor of the non-drafting party—the insured," and "provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." *Noxubee Cnty. Sch. Dist.,* 883 So. 2d at 1165; *see also Leonard*, 499 F.3d at 429 (holding that, if a court finds a policy provision is ambiguous, it "must then select the interpretation which gives the greater indemnity to the insured"). The Mississippi Supreme Court has explained that the basic reason for this "is that the insurer prepares the policy and should not be allowed by the use of obscure or ambiguous exceptions to defeat the purposes for which the policy was sold." *Com. Union Ins. Co. v. Dairyland Ins. Co.*, 584 So. 2d 405, 408 (Miss. 1991) (quotation

omitted).  Nonetheless, "[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 992 (Miss. 2021) (quotation omitted).

C.    Analysis

1.    Brit's Motion [84] to Strike

In opposition to Brit's Motion [74] for Summary Judgment, Atwood has submitted the Declaration [80-3] of insurance agent John Rosetti ("Rosetti"), which appears to have actually been prepared for a related case concerning a different policy of insurance issued to D.S. Ladner Holdings, LLC, and DAS Holdings, LLC (the "Ladner LLCs").   Decl. [80-3] at 1; *see Brit UW Limited v. D.S. Ladner Holdings, LLC and DAS Holdings LLC*, No. 1:21cv280-HSO-RPM, Decl. [78-1] (S.D. Miss. Nov. 3, 2022).

Brit asks the Court to strike Rosetti's Declaration, arguing that his opinions are inadmissible and irrelevant to the Court's interpretation of Atwood's Policy.  *See* Mem. [85] at 1, 4 (citing Fed. R. Civ. P. 56(e)).  Brit points out that Atwood has not proffered Rosetti as an expert witness and that interpretation of the Policy is a question of law for the Court, rendering the Declaration irrelevant.  *Id.* at 4.

Atwood responds that it "does not dispute [the] principle of the law" that "[i]nterpretation of an insurance contract is for the Court and any opinion by an expert that encroaches on the Court's authority should be stricken."  Resp. [87] at 1. However, Atwood maintains that Rosetti's Declaration does not do so, *see id.*, but

instead "provides this Court with background and context to understand how and why the Lloyd's Policy was purchased and how and why Atwood LLC submitted claims outside of the Policy's 30 day reporting period," *id.* at 2.

A declaration used to support a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  Only relevant evidence is admissible.  *See* Fed. R. Evid. 402.

To the extent the Declaration offers assertions of fact concerning the reporting of the Ladner LLCs' claims, *see, e.g.,* Decl. [80-3] at 3, such information is not relevant to this case and is therefore inadmissible, *see* Fed. R. Evid. 401. Although Atwood's claims and those of the Ladner LLCs may be similar, there is no indication that they are identical, and any facts surrounding Rosetti's reporting of the Ladner LLC's claims are not pertinent to this case.  *See id.*

Rosetti also relays his experience with claims-made and claims made and reported policies, *see* Decl. [80-3] at 3-4, which is an issue raised by Brit, *see* Mem. [75] at 9-10, and opines regarding what occurs under "a typical claims-made or claims-made and reported policy," *see* Decl. [80-3] at 3, and how "Lloyd's routinely chooses not to enforce [the 30-day] reporting provisions after a large catastrophic loss because they become impractical," *id.* at 3-4.   For purposes of resolving the present summary judgment Motions [74], [82], the issue before the Court is interpretation of the Policy's notice provision.  This is a question of law, and as such, the Declaration is not relevant for this reason as well.  The Motion [84] to

Strike should be granted, and the Declaration will not be considered.

2.   Brit's Motion [74] for Summary Judgment

Brit's Motion [74] raises the issue of the timeliness of Atwood's notice of loss as to some of its claims for property damage.   *See* Mot. [74]; Compl. [1].  Brit seeks summary judgment that "Atwood is not entitled to coverage and policy proceeds for any claim made more than 30 days after the date of loss or damage to any specific property insured."  Mot. [74] at 2.  Brit cites a list of what it maintains were late-reported claims it received in April and July 2021.  *See id.* (citing Ex. [1-2] at 1).

a.   Relevant Policy provisions

As stated previously, the Policy's "NOTICE OF LOSS, DUTIES AND RESPONSIBILITIES" provision states that the Assured, meaning Atwood,

> shall immediately report in writing, to the Underwriters, a description of every claimed loss or damage which occurs and may become a claim under this insurance immediately after it becomes known to the Assured.  You may make a claim for loss or damage covered under this policy/certificate if you notify Underwriters, but in no case, later [sic] than 30 days following the date of loss or damage.

Policy [1-1] at 21.  The section of the Policy concerning deductibles states that "[a]ll claims for loss damage or expense arising out of any occurrence shall be *adjusted separately for each reported location*, and from the amount of such adjusted claim the following shall be deducted . . . ."  *Id.* at 11 (emphasis added).   Later, the Policy provides that

> [i]f a breach of any warranty, duty, application, representation, responsibility, report or condition in any form or endorsement attached to or made a part of this insurance shall occur, such breach, by the term of such warranty, duty or condition, *shall operate to void this insurance*. It is agreed that such suspension or voidance due to such breach shall

12

> be effective only during the continuance of such breach, and then only as to the building or contents therein or other separate locations to which such warranty or condition has reference and as respects to which such breach occurs.

*Id.* at 20 (emphasis added).

    b.   <u>Whether the notice provision is clear and unambiguous</u>

The Court's initial focus must be to apply the basic tenets of contract interpretation. *See Noxubee Cnty. Sch. Dist.,* 883 So. 2d at 1165. Clear and unambiguous words are accorded their "plain, ordinary meaning" and must be applied as written based solely upon the four corners of the document. *Id.*

According to the Policy's notice provision at issue here,

> [t]he Assured shall *immediately report* in writing, to the Underwriters, a description of every claimed loss or damage which occurs and may become a claim under this insurance *immediately after it becomes known to the Assured.* You may make a claim for loss or damage covered under this policy/certificate *if you notify Underwriters*, but in *no case, later [sic] than 30 days* following the date of loss or damage.

*Id.* (emphasis added).[3] Having reviewed the Policy as a whole, the Court finds this notice provision required Atwood to "immediately report" every claimed loss or damage "immediately after it becomes known" to Atwood, with the clarification or qualifier by the second sentence that Atwood must "notify Underwriters" no later than "30 days following the date of loss or damage." *Id.* A plain reading of this provision indicates that the 30-day time limit operates to modify or elaborate on

---

[3] There appears to be at least one word missing from the second sentence of the Policy's notice provision, and with the phrase "but in no case" set off by commas, the second sentence is grammatically incorrect. Policy [1-1] at 21. However, this does not change the intent of the provision because the Court concludes that there is only one reasonable interpretation of the notice provision.

what the Policy means by its use of the term "immediately." *Id.* In other words, for
properties that sustained damage on October 28, 2020, Atwood had to report a loss
to Underwriters immediately, but in no case later than 30 days after the date of
loss, which would have been November 27, 2020.[4]

      c.   <u>Whether the Policy should be read as akin to a "claims-made and
reported" policy</u>

     The heart of this dispute is whether Atwood failed to notify Underwriters
within 30 days of Hurricane Zeta with respect to loss or damage to one or more of
its covered properties and whether that failure absolves Brit of any coverage
obligations. The parties disagree whether the 30-day notice provision made the
Policy akin to a "claims-made and reported" policy, such that it is an "essential
term" of the insurance, Mem. [75] at 10; whether it is a "condition precedent" to
coverage, *id.* at 12; or whether it is a "condition subsequent or forfeiture provision
that can be waived and/or requires the insurer to prove prejudice to avoid liability,"
Resp. [80] at 2. Brit and Atwood spend much time in their briefs comparing and
contrasting the Policy to other policies that have been interpreted by Mississippi
courts and the Fifth Circuit, and they appear to agree that there is no controlling
authority interpreting the precise provision at issue here. *See, e.g.,* Mem. [75] at 8.

     Brit suggests that the Court should read the notice provision as "akin" to a

---

[4] According to Mr. Atwood's Declaration, Hurricane Zeta made landfall "October 28-29,
2020." Decl. [80-2] at 1-2. Brit focuses on October 28 and states that "Atwood was required
to make a claim in writing for its purported Hurricane Zeta loss or damage to any
particular property by November 27, 2020." Mem. [75] at 8. This assumes that all of the
properties were damaged on October 28, and not the 29th, but that issue need not be
resolved now.

claims-made and reported policy, but acknowledges that "[s]ince this is not a typical insurance contract, there is no Mississippi authority interpreting a similar 30-day notice provision akin to a 'claims made and reported' requirement in an asset protection policy where the insured self-reports properties." *Id.* It cites a case from this District finding that, in "an insurance policy requiring both the claim to be made and reported during the policy period, the insured's reporting the claim within the prescribed period was an ***'essential term'*** to coverage." *Id.* at 10 (emphasis in original) (citing *Sollek v. Westport Ins. Corp.*, No. 3:12CV115-DPJ-FKB, 2012 WL 5835535, at *4 (S.D. Miss. Nov. 2, 2012)). Brit reasons that the 30-day notice provision in Atwood's Policy was an essential term, *see id.* at 10-11, and "[w]here Atwood did not report damage to any specific reported property within 30 days of Hurricane Zeta (i.e. by November 27, 2020), there is no coverage for that property," *id.* at 11.

Central to Brit's argument is a basic understanding of the different types of insurances policies potentially relevant here. "A 'claims made' policy protects the holder only against claims made during the life of the policy, while an 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect." *Minnesota Life Ins. Co.*, 164 So. 3d at 968 (quotation omitted) (discussing professional liability insurance policies); *see Sollek*, 2012 WL 5835535, at *3. For a claims-made policy, an insured is protected against claims made against it during the policy period, regardless of when the insured act or occurrence of loss itself took place. *See Minnesota Life Ins. Co.*, 164 So. 3d at 968; *Sollek*, 2012 WL 5835535, at

*3.  By contrast, the date of the covered act or loss occurrence is the focus of

occurrence policies, which "will cover all wrongful acts which occurred during the

term of the policy even if a claim is made after expiration of the policy if the

wrongful act took place while such policy was in effect." *Minnesota Life Ins. Co.*,

164 So. 3d at 968 (emphasis removed) (quotations omitted); *see also Sollek*, 2012 WL

5835535, at *3 (stating that an occurrence policy "protects the policy holder from

liability for any act done while the policy is in effect" (quotation omitted)).

Similar to a claims-made policy, under a "claims-made and reported policy,"

an insured is only protected against claims made against it during the policy period,

but it "also requires that the claim be reported to the insurance company within the

policy period." *Sollek*, 2012 WL 5835535, at *3 (quotation omitted); *see also Jones v.

Lexington Manor Nursing Ctr., L.L.C.*, 480 F. Supp. 2d 865, 868 (S.D. Miss. 2006)

(stating that the "true mark of a 'claims made' [policy] is that it provides coverage

for any claim first asserted against the insured during the policy period, regardless

of when the incident giving rise to the claim occurred.  Whether reporting to the

insurer [is] also a condition of coverage depends on the terms of the specific policy.").

In other words, while both claims-made and claims-made and reported policies

cover claims made within the policy period, regardless of when they arose, the latter

has the additional requirement that the claim must also be "reported to the

insurance company within the policy period." *Jones*, 480 F. Supp. 2d at 868.

Brit does not contend that the Policy here is actually a claims-made or a

claims-made and reported policy; instead, it posits that the 30-day notice provision

in the Policy should be construed as "*akin* to a 'claims made and reported'
requirement."  Mem. [75] at 8; *see* Rebuttal [86] at 6.  One problem with this
reasoning is that claims-made and claims-made and reported policies typically
involve third-party or professional liability coverage—the types of policies where the
insured receives a claim from a third party and then in turn reports that claim to its
insurance company.  *See Minnesota Life Ins. Co.*, 164 So. 3d at 958; *Sollek*, 2012 WL
5835535, at *1; *Jones*, 480 F. Supp. 2d at 866.  That is plainly not the scenario here.
The "claims" at issue in claims-made and claims-made and reported policies are
those submitted by third parties against an insured, not property loss claims
submitted by the insured itself to the insurer, as in this case.[5]  *See Minnesota Life
Ins. Co.*, 164 So. 3d at 958; *Sollek*, 2012 WL 5835535, at *3; *Jones*, 480 F. Supp. 2d
at 866.  Given these clear distinctions, Brit has not shown how its arguments
concerning these distinct types of policies support its summary judgment request.
Indeed, a plain reading of the Policy reflects that, at least as to Atwood's property
damage claims, this was essentially an occurrence policy.  *See* Policy [1-1];
*Minnesota Life Ins. Co.*, 164 So. 3d at 968; *Sollek*, 2012 WL 5835535, at *3.

A further review of the Policy supports this conclusion.  The Policy "covers all
property and/or interest at risk as of 12:01 AM (Standard Time at place of issuance)
on 12/17/2019 and continues in force until 12:01 AM (Standard Time at place of
issuance) on 12/17/2020."  Policy [1-1] at 10.  The Assured, Atwood, was "required to

---

[5] The Policy has a separate Commercial General Liability Coverage Form, covering bodily
injury and property damage liability, which is not at issue here.  *See* Policy [1-1] at 29.

report to Underwriters, on or before the tenth (10th) day of each month, a complete transaction report including the full replacement cost of each property to be insured," and premiums were calculated and paid each month. *Id.* (emphasis removed).   The plain meaning of this provision is that this requirement, if met, triggers coverage for those properties. *See id.* The Assured then must "immediately report in writing, to the Underwriters, a description of every claimed loss or damage which *occurs* and may become a claim under this insurance immediately after it becomes known," and it "may make a claim for loss or damage covered under this policy/certificate if [the Assured] notif[ies] Underwriters, but in no case, later [sic] than 30 days following the date of loss or damage." *Id.* at 21 (emphasis added).

While the Policy anticipates that the properties covered and the premium charged may change month-to-month over the course of the one-year Policy period, Brit cites no provision indicating that the loss could have occurred at any point in time, even if prior to the term of the Policy, distinguishing it from a typical "claims-made and reported" policy. *See id.* at 10, 21; *but see Minnesota Life Ins. Co.*, 164 So. 3d at 968; *Sollek*, 2012 WL 5835535, at *3. Nor has Brit argued that any Policy provision states that a claim must be reported to Underwriters before the expiration of the one-year Policy period in order to be covered, as required by claims-made and reported policies. *See* Mem. [75]; *but see Sollek*, 2012 WL 5835535, at *3; *Jones*, 480 F. Supp. 2d at 866.   Brit's arguments that the Policy should be read as "akin" to a typical "claims-made and reported" policy, and its reliance upon caselaw interpreting the latter, are unpersuasive. *See* Mem. [75] at 8-10.

18

      d.   <u>Whether the 30-day notice provision was a "condition precedent"</u>
            <u>to coverage</u>

Brit next contends that, to the extent the Court should find that the 30-day

notice provision constituted a condition precedent, it need not show prejudice in

order to avoid its obligations under the Policy.  Mem. [75] at 12.[6]  To the extent the

notice provision does not qualify as a condition precedent, Brit argues in the

alternative that Atwood's "conduct in late reporting claims outside the express 30-

day window breaches an obligation that voids coverage under the express terms of

the Policy."  *Id.* at 14.  It insists that the Policy bars "coverage for claims to any

scheduled property reported more than 30 days after October 28, 2020, the alleged

date of loss."  *Id.*

Atwood responds that the Policy does not contain the express language that

would be required to read the 30-day notice provision as a condition precedent to

coverage, and as such the provision could be waived or forfeited, and that this is

what occurred based upon the conduct of IAS as Brit's adjuster.  *See* Mem. [81] at

20-21.  Atwood takes the position that Brit's argument on this point demonstrates

that the notice provision is a "condition subsequent" to coverage, which means it

could be forfeited.  *See id.* at 21-23.  Atwood reasons that avoidance of liability

under a forfeiture provision such as this would require Brit to show that it was

prejudiced by any late notice before it could avoid coverage, making summary

judgment inappropriate.  *See id.*

---

[6] One of the declarations Brit seeks in the Complaint [1] is that it "has been prejudiced by
the Assured's failure to comply with its duties under the Policy."  Compl. [1] at 14.

Brit replies that it need not show prejudice because Atwood's "conduct in late reporting claims outside the express 30-day window voids coverage under the express terms of the Policy." Rebuttal [86] at 15. It maintains that the notice provision was a "contractual covenant of the insured" and "part of the insuring agreement itself." *Id.* (quoting *Sollek*, 2012 WL 5835535, at *6).

The Mississippi Supreme Court has explained that

> [w]here a contract of insurance requires as a condition precedent to insurer's liability, that notice be given to the insurer within "a reasonable time" or "as soon as practicable" after an accident, . . . such notice must have been given by the insured, or someone in his behalf, within the time agreed upon, unless there is a reasonable excuse offered by or for the insured, for his failure so to do.

*Harris v. Am. Motorist Ins. Co.*, 126 So. 2d 870, 873 (Miss. 1961). If an insured does not comply with a notice provision that constitutes a condition precedent to coverage, the insurer is not required to show prejudice in order to deny a claim. *See U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 490 (5th Cir. 1992) ("A substantial line of cases supports the rule that an insurer need not show prejudice when the insured breaches a condition precedent or a condition that voids the policy." (collecting cases)).[7]

---

[7] In *Wigginton*, the policy contained an examination clause requiring the insured to permit the insurer to question him under oath, and a concealment clause which provided that coverage "is void in any case of fraud" by the insured, and that "[i]t is also void if you or any other insurance [sic], at any time, intentionally conceal or misrepresent a material fact concerning" coverage, the covered property, the insured's interest in the covered property, or a claim. *Wigginton*, 964 F.2d at 490. After fire destroyed the property, the insured appeared at a scheduled deposition, but invoked the Fifth Amendment and declined to answer questions or to produce requested records, and the insurer denied the claim. *See id.* at 488.

However, "insurers who wish to make notice a condition precedent must do so clearly." *Cap. City Ins. Co. v. Ringgold Timber Co.*, 898 So. 2d 680, 682 (Miss. Ct. App. 2004) (citing *Com. Union Ins. Co. v. Dairyland Ins. Co.*, 584 So. 2d 405, 408 (Miss. 1991)).  The Mississippi Supreme Court held in *Dairyland* that, even though the policy required the insured to send notice "promptly," its failure to unambiguously state that a lack of notice would render any obligations under the policy void was not sufficient to establish such notice as a condition precedent to coverage.  *See Dairyland Ins. Co.*, 584 So. 2d at 407-08.[8]

Central to Brit's argument is that many of the policies in Mississippi with notice provisions that have been found not to be conditions precedent do not list a specific number of days within which notice must be provided.  *See, e.g.,* Mem. [75] at 13 ("Here, unlike general notice provisions in liability policies, the Policy only permits Atwood to make a claim for loss or damage if the claim is reported within 30 days of the date of loss or damage.").  The Court is not persuaded that the four corners of the Policy support a conclusion that the notice provision constituted a condition precedent that would, if not met, automatically absolve Brit of any coverage obligations.  *See* Policy [1-1] at 21.  First, the Policy does not clearly state that failure to comply with the notice provision would absolve Brit of coverage without any showing of prejudice.  *See Cap. City Ins. Co.*, 898 So. 2d at 682;

---

[8] The *Dairyland* policy ambiguously stated that the insurer "may have the right to refuse [the insured] any further protection" if prompt notice was not received, implying that the insured also "may not have the right to refuse protection."  *Dairyland Ins. Co.*, 584 So. 2d at 408.  The Mississippi Supreme Court construed this ambiguity in favor of the insured.  *See id.*

21

*Dairyland Ins. Co.*, 584 So. 2d at 407-08.  And, as the Court will discuss, language elsewhere in the Policy further counsels against such a conclusion.

Brit relies upon the breach of warranty provision, which states that

[i]f a breach of any warranty, duty, application, representation, responsibility, report or condition in any form or endorsement attached to or made a part of this insurance shall occur, such breach, by the term of such warranty, duty or condition, *shall operate to void this insurance.* It is agreed that such suspension or voidance due to such breach shall be effective only during the continuance of such breach, and then only as to the building or contents therein or other separate locations to which such warranty or condition has reference and as respects to which such breach occurs.

Policy [1-1] at 20 (emphasis added).

"A contract that is conditioned to become void on a specified event is one subject to a condition subsequent." *Cap. City Ins. Co.*, 898 So. 2d at 682.  In *Capital City*, the Mississippi Court of Appeals held that where coverage is granted in one section of a policy, but can be defeated by a later lack of notice, the notice provision operates as a condition subsequent to coverage. *See id.*  Under those circumstances, an insurer must demonstrate that it suffered prejudice based upon the lack of notice before it can deny coverage, and prejudice is a question of fact. *See id.*

When read as a whole, the Policy here contains similar forfeiture language— that coverage granted by one provision can be defeated if there is a subsequent lack of timely notice as required by a different policy provision. *See id.*; *see also, e.g.,* Policy [1-1] at 1 (Declaration Page); *id.* at 12 (stating in Property Covered provision that Atwood "shall be indemnified" for loss "by reason of all covered perils resulting in direct physical loss or damage to and property described and scheduled under

22

this policy"); *id.* at 21 (including the 30-day loss or damage notice provision in Policy Conditions); *id.* at 20 (stating that a breach of any condition "*shall operate* to void this insurance" (emphasis added)).  This conclusion is reinforced by the foregoing provision's use of the term "void" as a verb in the prepositional phrase "to void."  *Id.* at 20.  Synonyms of the verb "void" include repeal, null, overturn, negate, abolish, cancel, invalidate, nullify, rescind, and rescind, which all imply that some event or action has already occurred (i.e., coverage has been triggered) but is being later undone or forfeited.[9]  *See Void*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/void (last visited July 13, 2023).

Brit's reliance upon *Sollek* for its position is also unpersuasive, as that case is plainly distinguishable.  *See* Rebuttal [86] at 15 (citing *Sollek*, 2012 WL 5835535, at *6).  The policy in *Sollek* was a third-party claims-made and reported professional liability policy, *see Sollek*, 2012 WL 5835535, at *1, not an occurrence Policy as in this case.  Additionally, the Court's concern in *Sollek* was that it not "expand coverage beyond the scope of the bargain."  *Id.* at *8.  That is not the issue here

---

[9] In contrast, when used as an adjective, synonyms of the word "void" include null, null and void, invalid, inoperative, nonvalid, ineffective, and nonbinding.  *See Void*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/void (last visited July 13, 2023).  The breach of warranty provision does not employ "void" as an adjective.  *See* Policy [1-1] at 20.  In support of its argument, Brit relies upon *Wigginton*, Mem. [75] at 12, but that case is distinguishable, *see Wigginton*, 964 F.2d at 490.  The fire policy there employed "void" in the concealment clause as an adjective, and stated that the coverage part "is void" in the case of fraud and in the event an insured intentionally conceals or misrepresents a material fact.  *Id.*  "Mississippi law is clear that a policy is rendered void where an insured either fails to submit to an examination under oath or refuses to answer material questions during an examination under oath."  *Id.* (quotation omitted).  No such concealment or examination clauses are at issue here.  *See id.*  And, as the parties have acknowledged, there is no controlling case law interpreting the "unique coverage" at issue in the Policy in this case.  Mem. [75] at 8.

because requiring Brit to show prejudice would not expand coverage beyond that bargained for; this is because any properties damaged on October 28 or 29, 2020, were damaged within the one-year Policy period, and they would have already been covered by the triggering event of Atwood reporting them to Brit and paying the premium by the tenth day of that month. *See* Policy [1-1] at 10; *see also id.* at 12 ("The Assured shall be indemnified in [sic] respect to loss, up to the date of settlement of such loss, by reason of all covered perils resulting in direct physical loss or damage to and property described and scheduled under this policy in the Declarations which is not otherwise excluded . . . .").

In *Sollek*, the policy's term ran from April 8, 2010, to April 8, 2011, and it insured an attorney who had previously represented the plaintiff, Sollek. Sollek did not learn of his former attorney's alleged malpractice until after the policy period had expired. *See Sollek*, 2012 WL 5835535, at *1. He filed a legal malpractice lawsuit against the attorney on May 31, 2011, also after the policy had expired, and on January 3, 2012, he filed a state court action seeking a declaratory judgment that his former attorney's insurer Westport Insurance Corp. owed a duty to defend and indemnify the attorney in the malpractice action. *See id.* at *1-*2. The attorney's conduct in representing Sollek had not come to light until after the policy period had expired, and Sollek thus never made a malpractice "claim" on the claims-made and reported policy during the policy period. *See id.* Thus, coverage never attached to begin with. *See id.* at *8.

In *Sollek*, to permit the later-made claim to be covered would have wholly

circumvented the purpose of the claims made and reported policy, and would have expanded the length of the Policy itself. *See id.* at *3; *Minnesota Life Ins. Co.*, 164 So. 3d at 968. As the Court in *Sollek* explained, the making of the claim and the timely reporting were essential for coverage, and "allowing waiver or estoppel to nullify these requirements would fundamentally change the nature of the insurer's risk" and "likewise expand coverage beyond the scope of the bargain." *Sollek*, 2012 WL 5835535, at *8. The same is not necessarily true here, because it is undisputed that any losses would have *occurred* during the period the Policy was in force, between December 17, 2019, to December 17, 2020, and after coverage had been triggered for those properties reported by and listed as of the tenth day of the month, or by October 10, 2020. *See* Policy [1-1] at 10. In short, Brit's reliance upon *Sollek* is misplaced.

Brit's reliance upon Fifth Circuit cases applying Texas law similarly misses the mark. *See* Mem. [75] at 8-9 (citing *Blanco W. Properties, L.L.C. v. Arch Specialty Ins. Co.*, 773 F. App'x 795, 796 (5th Cir. 2019); *Starr Indem. & Liab. Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700, 702-04 (5th Cir. 2013); *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 659 (5th Cir. 1999)). First, the Court must apply Mississippi law; in addition, the foregoing authorities are otherwise distinguishable.

In *Blanco West*, the commercial property policy required the insured to provide "prompt notice" of any loss or damage, but there was an endorsement that changed the policy and stated that "[i]n addition to your obligation to provide us

with prompt notice of loss or damage, with respect to any claim wherein notice of the claim is reported to us more than one year after the reported date of loss or damage, this policy *shall not provide coverage for such claims*." *Blanco W. Properties, L.L.C.*, 773 F. App'x at 795 (emphasis in original). The *Blanco West* policy was clear that coverage would not attach if notice was not provided within one year, and the insurer was therefore not required to demonstrate prejudice if timely notice was not given. *See id.* Atwood's Policy contains no such clear language that no coverage would be available if notice was not given within 30 days. The Fifth Circuit's holding in *Blanco West* is distinguishable. *See id.*; Policy [1-1] at 21.

The policies in *Matador Petroleum* and *Starr Indemnity* contained an "absolute pollution exclusion clause," but in both cases, the insureds had purchased additional coverage to narrow those exclusions. *Starr Indem. & Liab. Co.*, 719 F.3d at 701; *Matador Petroleum Corp.*, 174 F.3d at 655. In *Matador Petroleum*, the purchased endorsement stated that the insurer "would not apply the pollution exclusion in the event of a 'covered pollution incident,'" which was defined, in part, as a discharge of pollutants that "[i]s reported to the [insurer] within 30 days of its beginning." *Matador Petroleum Corp.*, 174 F.3d at 655-56. The Fifth Circuit noted that the policy itself excluded pollution coverage and held that "under the plain language of the endorsement, timely reporting of the claim constituted one of the events necessary to trigger coverage." *Id.* at 660. Here, however, because coverage had already attached under Atwood's Policy, timely reporting of the claims under

26

the notice provision was not required to trigger coverage.  Brit's reliance upon

*Matador Petroleum* is therefore unpersuasive.  *See* Policy [1-1] at 21.

The same is true for *Starr Indemnity*, which relied heavily upon the holding

in *Matador Petroleum.   See Starr Indem. & Liab. Co.*, 719 F.3d at 702-03.  In *Starr*

*Indemnity*, a "buy-back" provision provided that the exclusion "shall not apply . . .

provided that the assured establishes" that certain conditions had been met,

including that "the discharge, dispersal, release or escape was reported in writing to

these underwriters within 30 days after having become known to the assured."  *Id.*

at 701 (emphasis removed).  The Fifth Circuit held that, under the plain language of

this endorsement, timely reporting of the claim was necessary to trigger coverage,

and as such the insurer was justified in denying coverage based upon the late

notice.  *See id.* at 703.  Again, the plain language of Atwood's Policy is simply

different, as timely reporting is not one of the conditions required for coverage to

initially attach.  *See* Policy [1-1] at 1, 12, 20, 21.

Based upon the foregoing, the Court finds that the 30-day notice provision in

Atwood's Policy did not operate as a condition precedent to coverage, and as such,

Brit would also have to show prejudice in order to avoid coverage.   *See id.* at 21;

*Sollek*, 2012 WL 5835535, at *1; *Cap. City Ins. Co.*, 898 So. 2d at 682.  While failure to

comply with the 30-day notice provision could potentially void coverage, Brit must

first demonstrate that it suffered prejudice based upon lack of notice in order for

there to be a forfeiture.  *See Cap. City Ins. Co.*, 898 So. 2d at 682.  These present

fact questions as to each property, including but not limited to, when notice was

actually given for each property (whether within 30 days or after), and whether Brit was prejudiced by or waived any of these late notices.  Such inherently factual issues are not before the Court at this time.[10]  Brit's Motion for Summary Judgment should be denied.

3.   <u>Atwood's Motion [82] for Partial Summary Judgment on the Issue of Notice</u>

Atwood seeks partial summary judgment on the issue of notice, stating it "is entitled to partial summary judgment and an order from this Court finding that the 30 day notice provision is a condition that Brit could waive, and/or that Brit could be estopped to assert, and/or that would require Brit to prove prejudice due to any delay." Mot. [82] at 2.   In substance, Atwood is arguing the converse of Brit's Motion [74] for Summary Judgment.  Given the Court's resolution of Brit's Motion [74] for Summary Judgment, Atwood's Motion [82] should be denied as moot.

## III.  <u>CONCLUSION</u>

To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Brit UW Limited's Motion [84] to Strike the Declaration [80-3] of John Rosetti is **GRANTED**, and the Declaration [80-3] of John Rosetti is the Declaration [80-3] of

---

[10]  Whether Brit in fact waived the notice provision as to some, all, or none of the properties is a question for another day.

John Rosetti is **STRICKEN** and will not be considered for purposes of the present summary judgment Motions [74], [82].

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Brit UW Limited's Motion [74] for Summary Judgment is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Atwood Properties, LLC's Motion [82] for Partial Summary Judgment on the Issue of Notice is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the stay of discovery is **LIFTED**, and the parties are directed to contact the Magistrate Judge within ten (10) days to discuss whether an Amended Case Management Order needs to be entered.

**SO ORDERED AND ADJUDGED**, this the 31st day of July, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE